**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ONLY THE FIRST, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-cv-1333 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| SEIKO EPSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Only The First, Ltd. ("OTF") has sued Defendant Seiko Epson Corporation

("SEC") for infringement of United States Patent No. 7,058,339 (the "'339 patent"). On July 8,

2009, the Court issued its Memorandum Opinion and Order [122] construing the disputed claim

terms in the '339 Patent ("Claim Construction Order"). Currently before the Court is SEC's

motion for summary judgment of non-infringement of the '339 patent [138]. For the reasons

stated below, SEC's motion for summary judgment is granted.

**I.      Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1

statements[1]: SEC's Statement of Facts ("Def. SOF") [139], OTF's Response to SEC's Statement

---

[1] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that

of Facts and Statement of Additional Facts ("Pl. SOF") [146], and SEC's Response to OTF's Statement of Additional Facts ("Def. Resp.") [159].

The '339 patent, entitled "Printing System," relates to a color printing system and devices and elements useful in that system. The abstract for the '339 patent describes the invention as:

> A color printing system comprising a combination of at least four, and preferably six coloring materials, each of a different color, wherein these colors are selected from (1) an orange-red; (2) a violet-red; (3) a violet-blue; (4) a green-blue; (5) a green-yellow; and (6) an orange-yellow; as well as white and black. This system may be incorporated into a wide range of printing devices and provides a means of achieving a wide range of colors.

'339 Patent, Abstract. OTF has accused SEC's Epson Stylus Photo R800 and R1800 printers and their compatible Epson ink cartridges (collectively, the "Accused Products") of infringing claims 2, 4, 5, 7, 12-14, 16-18, 22, 26 and 27 of the '339 Patent ("Asserted Claims"). Def. SOF ¶ 6.

Claim 2 of the '339 Patent is an independent claim which reads as follows:

> A color printing system comprising a combination of six coloring materials, which are
> (1) an orange-red;
> (2) a violet-red;
> (3) a violet-blue;
> (4) a green-blue;
> (5) a green-yellow; and
> (6) an orange-yellow and wherein one of said colors is optionally replaced by black or white, or wherein any color other than (3) is optionally replaced by dark orange.

---

do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

'339 patent, col. 12, ll. 28-38.  Claims 4, 5, 7, 12-14, 16-18, and 22 depend from and include each of the limitations of claim 2 of the '339 Patent.  Def. SOF ¶ 8.  Claim 26 of the '339 Patent is an independent claim which reads as follows:

> A method for producing a color print, said method comprising printing onto a substrate, a combination of six coloring materials, which are
> (1) an orange-red;
> (2) a violet-red;
> (3) a violet-blue;
> (4) a green-blue;
> (5) a green-yellow; and
> (6) an orange-yellow and wherein one of said colors is optionally replaced by black or white, or wherein any color other than (3) is optionally replaced by dark orange, in a manner and in a halftone (process) mixture so as to produce the desired design and color thereon, wherein when the color printing system includes black, the black is optionally applied unmixed.

'339 patent, col. 14, ll.12-26.  Claim 27 depends from and includes each of the limitations of claim 26 of the '339 Patent.  Def. SOF ¶ 10.

The accused SEC printers use the following eight ink cartridges: T054720 Red, T054320 Magenta, T054920 Blue, T054220 Cyan, T054420 Yellow, T054820 Matte Black, T054120 Photo Black, and T054020 Gloss Optimizer. Def. SOF ¶ 11.  OTF has alleged that the accused SEC ink cartridges infringe the Asserted Claims of the '339 Patent by falling within the scope of the claimed "coloring materials" as follows: T054720 Red ("orange-red"), T054320 Magenta ("violet-red"), T054920 Blue ("violet-blue"), T054220 Cyan ("green-blue"), T054420 Yellow ("green-yellow"), T054820 Matte Black and/or T054120 Photo Black ("black," serving as a replacement for "orange-yellow").  Def. SOF ¶ 12.  For any of the asserted claims of the '339 patent to be infringed, the five coloring materials T054720 Red, T054320 Magenta, T054920 Blue, T054220 Cyan, and T054420 Yellow must each fall within the scope of a different coloring material claimed in the patent, specifically, "orange-red," "violet-red," "violet-blue," "green-blue," "green-yellow," and "orange-yellow."  Def. SOF ¶ 13.

In its Claim Construction Order, the Court construed the six claimed colors – orange-red, violet-red, violet-blue, green-blue, green-yellow, and orange-yellow. The Court construed the term green-yellow as follows:

A color which, when analyzed spectroscopically, reflects in order of quantity or intensity, yellow followed by green and then orange, wherein yellow and green have the two highest quantities or intensities, respectively. The relative quantities or intensities of each color are determined by comparing the areas under the spectroscopic graph of reflectance (percent) versus wavelength occupied by the specified color. The wavelength occupied by each specified color is as follows: violet: 400-440 nm; blue: 420-490 nm; green: 490-550 nm; yellow: 550-590 nm; orange: 590-620 nm; red: 610-700 nm.

The Court construed each of the other six claimed colors according to the same pattern.

As support for its infringement contentions, OTF relies on a set of spectroscopic test data regarding the accused SEC inks. Def. SOF ¶ 17. OTF's data shows that four of SEC's accused inks fall within the scope of one of the colors claimed in the '339 patent. Specifically, under the Court's Claim Construction, T054720 Red is an "orange-red," T054320 Magenta is a "violet-red," T054920 Blue is a "violet-blue," and T054220 Cyan is a "green-blue." OTF's spectroscopic analysis of SEC's accused yellow ink (T054420 Yellow) results in the following areas under the spectroscopic graph of reflectance (percent) versus wavelength:

| OTF3298 | Wavelength Range | Area Under Spectroscopic Curve | Color Ranking |
|---|---|---|---|
| Red | 610-700 nm | 67.6735 | 1 |
| Green | 490-550 nm | 36.1793 | 2 |
| Yellow | 550-590 nm | 29.2007 | 3 |
| Orange | 590-620 nm | 20.0811 | 4 |
| Blue | 420-490 nm | 3.9819 | 5 |
| Violet | 400-440 nm | 2.1391 | 6 |

Def. SOF ¶ 18. OTF's data demonstrates that, when analyzed spectroscopically, SEC's accused yellow ink reflects in order of quantity or intensity, red followed by green, followed by yellow.

SEC moved for summary judgment of non-infringement on the ground that SEC's yellow ink is not within the scope of a "green-yellow" either literally or under the doctrine of equivalents. OTF concedes that SEC's accused yellow ink does not meet the Court's construction of the claim term "green-yellow" because it does not reflect in order of quantity or intensity yellow followed by green, and that, therefore, SEC's Accused Products do not literally infringe any of the Asserted Claims (all of which recite a "green-yellow" limitation). In opposition to SEC's motion for summary judgment, OTF maintains that SEC's accused yellow ink infringes the '339 patent under the doctrine of equivalents. Consequently, the question before the Court is whether SEC's accused yellow ink is equivalent to the green-yellow claimed in the patent.

## II.     Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is

proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The ultimate burden of proving infringement rests with the patentee, OTF, which is the non-moving party on the instant motion for summary judgment. See *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1325 (Fed. Cir. 2004). Therefore, SEC "need only establish a deficiency concerning an element of [OTF's] infringement claim." *Id.* at 1325-26. To survive SEC's motion for summary judgment of non-infringement, OTF must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 1326 (citation omitted).

## III. Analysis

Determining patent infringement generally requires two steps. *Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1361 (Fed. Cir. 2007). First, the asserted claims must be properly construed to determine their scope and meaning. *Id.* Second, the properly construed claims must be compared to the accused product to determine whether the accused products infringe the asserted claims. *Id.* The scope of claims is "not limited to its literal terms but instead embraces all equivalents to the claims described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, (2002). Therefore, an accused product may infringe a patent claim either literally or under the doctrine of equivalents.

Here, it is undisputed that every element of the claim term green-yellow, as construed by the Court, is not found in SEC's accused yellow ink. In particular, the Court construed the claim term "green-yellow" as "a color which, when analyzed spectroscopically, reflects in order of quantity or intensity, yellow followed by green and then orange, wherein yellow and green have the two highest quantities or intensities, respectively." But, as OTF admits, SEC's accused yellow ink reflects, in order of quantity or intensity, red followed by green, followed by yellow when it is analyzed spectroscopically. Consequently, the Accused Products do not literally infringe the Asserted Claims. See *ACCO Brands, Inc. v. Micro Sec Devices, Inc.*, 346 F.3d 1075, 1080 (Fed. Cir. 2003) ("[l]iteral infringement requires that every element of the invention as claimed is present in the accused device").

However, the parties dispute whether there is infringement by equivalents. Under the doctrine of equivalents, a product may be "found to infringe if there is 'equivalence' between the elements of the accused product * * * and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997). OTF maintains that SEC's accused yellow ink is equivalent to the green-yellow of the '339 patent, such that it infringes the '339 patent under the doctrine of equivalents. For that position, OTF relies on the principle that humans perceive the combination of reflected red and green light as the color yellow. OTF argues that because SEC's yellow ink reflects mostly red and green light to produce yellow, it is equivalent to a green-yellow, which also reflects light in such a way to produce the color yellow.

## A.     The Doctrine of Equivalents

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through

trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002). The doctrine of equivalents is designed to prevent "the unscrupulous copyist [from] mak[ing] unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 607 (1950).

A finding of infringement under the doctrine of equivalents requires a showing that the accused product contains each limitation of the claim or its equivalent. See *AquaTex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005). "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial." *Id.* One way of demonstrating that a difference is insubstantial is "by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Stumbo*, 508 F.3d at 1364; see also *Graver Tank*, 339 U.S. at 608.

One legal limitation on the doctrine of equivalents is "the 'all-elements rule,' which bars a patentee from asserting 'a theory of equivalence [that] would entirely vitiate a particular claim element.'" *DePuy Spine, Inc. v. Medtroinc Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009). In determining whether a finding of equivalence would violate the all-elements rule, a court must consider "the totality of circumstances." *Freedman Seating Co. v. Am. Seating Co.,* 420 F.3d 1350, 1359 (Fed. Cir. 2005). Claim vitiation applies only where there is a "clear, substantial difference or a difference in kind" between the claim limitation and the accused product, not where there merely is a "subtle difference in degree." *Trading Technologies Intern., Inc. v. eSpeed, Inc*., 595 F.3d 1340, 1355 (Fed. Cir. 2010). In other words, if "the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter

without rendering the pertinent limitation meaningless," then the all elements rule has not been violated. *Freedman*, 420 F.3d at 1359. Thus, the all-elements rule and the "insubstantial difference" test for equivalency really are two sides of the same coin. See *Trading Tech.*, 595 F.3d at 1355 (the all-elements "rule empowers a court to perform again the standard 'insubstantial variation' test for equivalency, but this time as a question of law"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-19 (Fed. Cir. 2006) ("A holding that the doctrine of equivalents cannot be applied to an accused device because it 'vitiates' a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency").

The issue of equivalence is a question of fact. *Graver Tank*, 339 U.S. at 607. However, "where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson*, 520 U.S. 17, 39 n.8. Also, "the various legal limitations on the application of the doctrine of equivalents" – including the application of the all elements rule – "are to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law." See *id.*; *DePuy Spine*, 567 F.3d at 1324.

## B.    Analysis Under the Doctrine of Equivalents

To avoid a grant of summary judgment of non-infringement by equivalents, the patentee must present "particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device, or with respect to the 'function, way, result' test." *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382

(Fed. Cir. 2007) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).  Here, OTF has failed to present evidence from which a reasonable jury could find that the differences between SEC's accused yellow ink and the "green-yellow" coloring material of the '339 patent are insubstantial.  For that reason, as well as the other reasons discussed below, SEC is entitled to summary judgment of non-infringement.

OTF's theory of infringement is based on the testimony of its experts (inventor of the '339 patent, Michael Wilcox, and Dr. Clive Duggleby) that the combination of reflected red and green light appears yellow to the human eye.  To understand that principle, it is helpful to consider how humans perceive color.  The human eye has three types of cone receptors:  S-type cones, which are stimulated by blue light; M-type cones, which are stimulated by green light; and L-type cones, which are stimulated by red light.  Yellow is perceived when red and green lights are simultaneously produced to stimulate both M-type and L-type cones.

OTF relies on the testimony of Wilcox and Duggleby that the spectroscopic curve for SEC's yellow ink cartridge shows that the cartridge is an insubstantial change from the green-yellow coloring material of the '339 patent as defined by the Court.  In particular, according to OTF, the fact that SEC's ink reflects a high amount of light in the red and green wavelength ranges as opposed to the yellow wavelength range is insubstantial because the red and green reflected light produce the color yellow.  OTF also contends that the "function, way, result" test demonstrates that the difference is insubstantial.  Specifically, according to OTF, SEC's yellow ink and a "green-yellow" (1) perform the same function – using an ink that reflects light in such a way to produce the color yellow; (2) perform that function in substantially the same way – employing ink that when analyzed spectroscopically, reflects the light in such a way to produce the color yellow; and (3) produce the same result – a color that is perceived as yellow.

The fundamental problem with OTF's theory is that the claim limitation at issue is not the presence of a yellow coloring material, but of a *green*-yellow coloring material. As noted above, the Court construed the claim term "green-yellow" to mean "a color which, when analyzed spectroscopically, reflects in order of quantity or intensity, yellow followed by green and then orange, wherein yellow and green have the two highest quantities or intensities, respectively." In construing the claim terms, the Court looked to the patent specification, which explains that the six claimed colors were chosen because of their various biases toward and away from the secondary colors. '339 Patent, col. 5 and Fig. 2. According to the specification, there are at least three different types of yellow: "orange-yellow" (a "yellow which is slightly 'biased' towards orange"), "green-yellow" (a "yellow which is slightly 'biased' towards green") and "mid-yellow" (a "yellow without a strong bias in either direction (either towards green or orange)"). *Id.* at col. 7, ll. 1-4 and 63-65. The specification further states that each claimed color is "an efficient reflector" of the secondary color that it is biased toward, meaning that it "will 'leave behind' a high 'quantity' or intensity of th[at] particular secondary colour." *Id.* at col. 5, ll. 5-9. Based on those statements, the Court concluded that a "green-yellow" must reflect a relatively high amounts of both yellow and green light.

Here, at best, OTF has set forth evidence demonstrating that SEC's accused yellow ink appears yellow. But OTF presents no evidence that SEC's accused yellow ink would be perceived as a green-yellow (rather than an orange-yellow, or a mid-yellow), or that it leaves behind a high quantity of green.[2] Therefore, regardless of the accuracy of OTF's argument from a scientific perspective, OTF has failed to present evidence from which a reasonable jury could

---

[2] OTF notes that SEC's yellow ink has been described by suppliers as a "green shade" of yellow. However, OTF does not appear to rely on that fact for its equivalence argument, and the Court doubts whether that evidence alone would be sufficient to raise a genuine issue of material fact for trial. But even if it were sufficient, SEC nevertheless would be entitled to summary judgment of non-infringement for the additional reasons set forth below.

find that SEC's yellow ink is equivalent to a green-yellow. Because OTF bears the burden of proving infringement under the doctrine of equivalents, summary judgment in SEC's favor is appropriate in light of OTF's failure to present sufficient evidence of equivalence. See *Celotex*, 477 U.S. at 322 (summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").[3]

Nor can OTF use the doctrine of equivalents to expand the green-yellow claim limitation to include all shades of yellow. See *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 493 F.3d 1368, 1379 (Fed. Cir. 2007) ("[t]he theory of the doctrine of equivalents is that an applicant through the doctrine of equivalents should only be able to protect the scope of his invention, not to expand the protectable scope of the claimed invention to cover a new and unclaimed invention") (citation omitted); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("A particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied"). Here, Mr. Wilcox implicitly excluded shades of yellow that are not biased toward green from the "green-yellow" claim limitation when, acting as his own lexicographer, he defined the claim term "green-yellow" as such, and distinguished it from other shades of yellow such as "orange-yellow" and "mid yellow." Consequently, OTF cannot use the doctrine of equivalents to expand the meaning of "green-yellow" to include all colors that are perceived as yellow.

---

[3] OTF contends that SEC's motion for summary judgment must be denied because SEC has set forth no evidence to refute OTF's experts' testimony regarding whether SEC's yellow ink is an insubstantial change from the green-yellow of the '339 patent. However, because OTF has not presented evidence creating a genuine issue of material fact for trial, there is nothing for SEC to rebut.

Apart from OTF's failure to grapple with the distinction between yellow and green-yellow, SEC is entitled to a finding of non-infringement as a matter of law for a number of other reasons. First, OTF's theory of equivalence entirely vitiates the claim limitation classifying colors based on the result of a spectroscopic analysis, not visual perception, in violation of the all-elements rule. As the Court noted in the claim construction order, "the parties' experts agree that different people perceive colors differently." For that reason, the Court construed the claims with reference to specific wavelength ranges for each color to avoid issuing a "purely subjective construction" that "would not notify the public of the patentee's right to exclude since the meaning of the claim language would depend on the unpredictable vagaries of any one person's" perception of colors. *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005). Here, OTF's theory of equivalence would introduce the very subjectivity that the Court's construction purposely sought to avoid, because, as OTF's own expert concedes, the way in which SEC's yellow ink is perceived (as green-yellow, orange yellow, another shade of yellow, or some other color) is subjective. See Exh. B to Pl. SOF. (Wilcox admitting that "there is no objective way of determining how people perceive colors"). Because OTF's theory of equivalence would vitiate the claim limitation requiring spectroscopic analysis, the all-elements rule bars OTF from asserting infringement by equivalents against SEC's yellow ink.

In addition, OTF's theory of equivalence fails to articulate any objective method by which to classify SEC's yellow ink as "green-yellow," as distinct from an "orange-yellow," or any other shade of yellow. The lack of any objective evidence that the difference between the claimed and accused products is insubstantial also is fatal to OTF's theory of equivalence. See *Transco Prod. Inc. v. Performance Contracting, Inc.*, 1996 WL 153676 at *10 (N.D. Ill. April 1, 1996) ("The 'insubstantiality' test rests on objective evidence, not unexplained subjective

conclusions, whether offered by an expert witness or otherwise."); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996) ("'objective evidence rather than unexplained subjective conclusions' may be relevant to the determination whether the differences between the accused product or process and the claimed invention are insubstantial"); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997) (holding that "[t]he determination of equivalence should be applied as an objective inquiry on an element-by-element basis").

Finally, OTF's attempt to demonstrate equivalence under the "function, way, result" test fails. The testimony of OTF's own experts demonstrates that SEC's accused yellow ink performs the claimed function in a substantially different way than the claimed invention. Mr. Wilcox testified that "[t]here are two interchangeable ways in which a green-yellow can be produced[:]" (1) with ink that "reflect[s] * * * a lot of light * * * in what the Court defined as the yellow wavelength range with low amounts in what the Court defined as the red and green wavelength ranges," and (2) with ink that "reflect[s] high amounts of light in the red and green wavelength ranges." Wilcox Decl. ¶¶ 21-23. See also Duggleby Decl. ¶¶ 12-13. Wilcox contends that "[t]he way in which that result is achieved is substantially the same because you are employing coloring material – *i.e.*, pigments and inks – that when analyzed spectroscopically will reflect light in such a way as to produce the color yellow." Wilcox Decl. ¶ 24. But Wilcox essentially collapses the same function (using ink to produce a yellow color) and same way (using ink that, when analyzed spectroscopically, reflects light in such a way to produce the color yellow) inquiries because any ink that produces a yellow color will reflect light to produce yellow when analyzed spectroscopically. The Court concludes that SEC's yellow ink performs the claimed function in a substantially different way than the claimed green-yellow limitation.

Therefore, no reasonable factfinder could find SEC's ink equivalent to a "green-yellow" under the doctrine of equivalents. See, *e.g., Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1361 (Fed. Cir. 2009); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1324 (Fed. Cir. 2004).

**IV.    Conclusion**

For the foregoing reasons, SEC's motion for summary judgment of non-infringement of the '339 patent [138] is granted.

Dated: September 29, 2010

_____
Robert M. Dow, Jr.
United States District Judge